**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRIAN TERRANCE JONES,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-24-1365 |
| **YESCARE CORP.,** *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Brian Terrance Jones, a sentenced prisoner who is proceeding without counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical care while incarcerated at Eastern Correctional Institution ("ECI"). He names as defendants YesCare Corporation ("YesCare"), Dr. Jason Clem, Nurse Practitioner Stephanie Cyran, and Dr. Razaak Eniola.[1] In response, YesCare, Dr. Clem, and Cyran filed a motion to dismiss or, alternatively, for summary judgment. ECF 18. Jones requested and was granted an extension of time to file an opposition to the motion, but he has not done so. ECF 20 & 21. Jones instead filed a motion to appoint counsel, indicating that he was receiving assistance from a law firm but is no longer receiving that assistance. ECF 22. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the defendants' motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted. Jones's motion to appoint counsel is denied.

**I.   Background**

Jones transferred to ECI from Jessup Correctional Institution in late September 2022. ECF 18-11, ¶ 8; ECF 18-3, at 8–10. At that time, he had been prescribed amlodipine (Norvasc) 10 mg,

---

[1] The Clerk shall correct the spelling of Dr. Eniola's name on the docket. Dr. Eniola has not been served with the complaint.

hydrochlorothiazide ("HCTZ") 25 mg, aspirin 81 mg, fiber-caps one cap twice daily, Lipitor[2] 10 mg, and a super multivitamin, among other medications. ECF 18-11, ¶ 7; ECF 18-3, at 2–4. The prescriptions Jones arrived with did not expire until December 2, 2022. ECF 18-11, ¶ 7; ECF 18-3, at 2.

At ECI, when a patient such as Jones has prescription medications that he is permitted to self-administer (also known as "keep on person" or "KOP" medications), he must request refills from nursing staff by submitting a sick call slip. ECF 18-11, ¶ 6. A patient fills out a sick call slip for a refill by placing stickers with the medication name and a barcode on the slip and checking a box indicating that a refill is needed. *Id.* Nursing staff then triage sick call slips and scan the barcodes to refill medications if they are still valid prescriptions and have not expired. *Id.* If the medications have expired, the nurses notify a provider to order a refill. *Id.* Each time KOP medications are distributed, they are tracked by nursing staff on a monthly medication administration record ("MAR.") *Id.*

Jones filled out a sick call slip on December 14, 2022 requesting refills of HCTZ, amlodipine, and multivitamins. *Id.* ¶ 9; ECF 18-4, at 236. It was received on December 16, 2022 and refills were ordered that same day. ECF 18-4, at 236.

---

[2] Amlodipine is a calcium channel blocker that "lowers blood pressure by relaxing the blood vessels so the heart does not have to pump as hard. [It] is also used to treat certain types of angina (chest pain) and other conditions caused by coronary artery disease." *Amlodipine*, Drugs.com, https://www.drugs.com/amlodipine.html (last visited Sept. 17, 2025). HCTZ is a diuretic or "water pill" "that helps prevent [the] body from absorbing too much salt, which can cause fluid retention." *HCTZ*, Drugs.com, https://www.drugs.com/hctz.html (last visited Sept. 17, 2025). Lipitor is used "to reduce the risk of heart attack and stroke and to decrease the chance that heart surgery will be needed in people who have heart disease or who are at risk of developing heart disease." *Lipitor*, Drugs.com, https://www.drugs.com/lipitor.html (last visited Sept. 17, 2025). Atorvastatin, which sometimes appears in Jones's medical records as one of his prescribed medications, is the generic name of Lipitor. *See id.*

Jones filled out another sick call slip on December 30, 2022 stating that he had requested refills approximately two weeks before and was out of medications. ECF 18-11, ¶ 10; ECF 18-4, at 239. Cyran states that, on December 31, 2022, she renewed Jones's medications through April 29, 2023, but that she was unable to locate any medical record documenting the December 31 renewal. ECF 18-11, ¶ 10. The medical staff received the December 30 sick call slip on January 6, 2023. ECF 18-11, ¶ 10; ECF 18-4, at 239. The January MAR shows that Jones was issued and signed for his KOP medication on January 5, 2023. ECF 18-4, at 179.

The February 2023 MAR shows that Cyran was the prescriber of Jones's multivitamin, HCTZ, Lipitor, amlodipine, and aspirin. ECF 18-11, ¶ 10; ECF 18-4, at 178. The same MAR does not show that the nursing staff issued Jones his KOP medications. ECF 18-11, ¶ 10; ECF 18-4, at 178. The March 2023 MAR shows that Jones received and signed for aspirin, amlodipine, HCTZ, and multivitamins on an unknown date. ECF 18-11, ¶ 10; ECF 18-4, at 177.

Jones was seen by Registered Nurse Danielle Ballard on April 25, 2023 and reported taking his blood pressure medications. ECF 18-11, ¶ 11; ECF 18-4, at 27. Jones told Ballard that he had his KOP medications. ECF 18-11, ¶ 11. The May 2023 MAR shows that Jones picked up his HCTZ, chewable aspirin, Norvasc, Lipitor, and multivitamins for the month, but again does not indicate the date he received them. ECF 18-4, at 175.

A record of one of Jones's medical visits, dated May 31, 2023, states that Jones missed a dose of amlodipine because he was "anticipated to be off-site" and so "held his amlodipine." *Id.* at 24. The record indicates that Jones presented to nurses with a blood pressure of 152/110, but that he had no headache, lightheadedness, edema, or chest discomfort. *Id.* Jones told the nurse he planned to take the amlodipine when he returned to his cell. *Id.* Jones returned later that day, stating

3

he had not taken his amlodipine and that it was in his cell. *Id*. at 22. At that time, his blood pressure was 152/100. *Id*. Jones was instructed to take his medication when he returned to his cell. *Id*.

The MAR for June also documents that Jones was provided his KOP medications but does not show the date he received them. *Id.* at 174. The June MAR further indicates that Jones's prescriptions had been renewed by Certified Registered Nurse Practitioner Bethany Roderer on May 11, 2023. *Id*.

On July 5, 2023, Jones was brought to the infirmary because he was vomiting and feeling dizzy. *Id.* at 20. Dr. Paul Matera admitted him to the infirmary for observation. *Id*. At 5:07 p.m., Registered Nurse Sharon Causey notified Dr. Matera that Jones was having persistent nausea and vomiting as well as numbness on his right side. *Id*. at 18–19. At that time, 911 was called. *Id.* Jones was transported to TidalHealth Hospital where he was admitted, and it was determined that he had had a stroke. ECF 18-11, ¶ 16.

After being admitted to TidalHealth, Jones had a "transthoracic echo (TTE) with bubble study" showing:

> (1) Normal cardiac chamber sizes (2) Mild concentric LVH [left ventricle hypertrophy] (3) Normal regional left ventricular wall motion with normal left ventricular ejection fraction estimated at 68% (4) Trace to mild mitral and tricuspid regurgitation, RVSP [right ventricular systolic pressure] is estimated at 25 mmHg (5) Negative bubble study for intracardiac shunting (6) No intracardiac source of embolism is identified.

*Id.* ¶ 15; ECF 18-4, at 74.

Jones also was given a head CT scan which revealed no intracranial bleed, no mass effect, midline shift, hydrocephalus, or acute large territory infarction. ECF 18-4, at 80. An MRI of Jones's brain showed an "acute infarct involving the inferior right cerebellum suggestive for acute right PICA infarct" with "[s]ubtle associated edema." *Id*. at 83. A brain angiogram showed a "[s]ubacute infarct paramedian right cerebellar hemisphere" with "[n]o hemodynamically significant lesion

4

identified." *Id*. at 85. Jones was given another MRI on July 6, 2023 and a second head CT without contrast on July 7, 2023. *Id*. at 84–87.

Jones was discharged from the hospital on July 9, 2023 with a treatment plan to continue with aspirin, Plavix, a high dose statin, Tylenol/Percocet, Lipitor 80 mg, and Lovenox for deep vein thrombosis prophylaxis.[3] ECF 18-11, ¶ 16. According to Cyran, the discharge summary included a recommendation from the neurologist for "hypercoagulable workup and a cardiac monitor to look for any evidence of paroxysmal AFib." *Id*. The discharge summary is mostly illegible. ECF 18-4, at 141–45. Cyran explains that the discharging physician planned to discharge Jones with a Zio heart monitor and outpatient follow-up with neurology as well as a continuation with dual antiplatelet therapy for three weeks followed by monotherapy. ECF 18-11, ¶ 16.

After Jones arrived at ECI on July 9, 2023, he was seen by Physician's Assistant Bruce Ford, who prescribed acetaminophen 325 mg, atorvastatin 80 mg, clopidogrel 75 mg, and cyanocobalamin 1000 mcg tablet.[4] ECF 18-4, at 16. These medications were KOP and were added to the other KOP medications Jones already was prescribed, including amlodipine 10 mg, aspirin 81 mg chewable, and HCTZ 25 mg tablet. *Id*. at 14.

Cyran saw Jones on July 10, 2023 in the infirmary. ECF 18-11, ¶ 18; ECF 18-4, at 12–13. Jones was not in acute distress and told Cyran that he was taking his medications as prescribed daily. ECF 18-4, at 12. Cyran submitted consultation requests for physical therapy evaluations and

---

[3] Plavix (clopidogrel) "prevents platelets in [the] blood from sticking together to form an unwanted blood clot that could block an artery." *Plavix*, Drugs.com, https://www.drugs.com/plavix.html (last visited Sept. 17, 2025). Statins are a class of drugs that are used to lower cholesterol and to reduce the risk of heart attack, stroke, chest pain, and heart disease. *Statins*, Drugs.com, https://www.drugs.com/drug-class/hmg-coa-reductase-inhibitors.html (last visited Sept. 17, 2025). "Lovenox is an anticoagulant that helps prevent the formation of blood clots." *Lovenox*, Drugs.com, https://www.drugs.com/lovenox.html (last visited Sept. 17, 2025).

[4] Cyanocobalamin is the generic name for Vitamin B12. *Vitamin B12 Injection*, Drugs.com, https://www.drugs.com/vitamin-b12.html (last visited Sept. 17, 2025).

a telemedicine neurology follow-up. *Id*. at 10–11. Roderer submitted those requests again on July 14, 2023. *Id*. at 6–8.

On July 17, 2023, Jones saw Dr. Mauro Sarmiento in the infirmary. *Id.* at 4. Dr. Sarmiento noted that Jones had no complaints and that he denied residual symptoms, chest pain, shortness of breath, or palpitations (among other symptoms). *Id*. Dr. Sarmiento started Jones on an extra 20 mg of lisinopril for a total of 40 mg and noted that his blood pressure was 146/76, close to his goal of less than 140/80.[5] *Id*. at 5. Dr. Sarmiento determined that Jones was stable for discharge from the infirmary and made plans to put in a referral to cardiology for a cardiac monitor. *Id*. At that time, a neurology follow-up was pending. *Id*.

Jones was approved for a neurology follow-up consultation on July 20, 2023. ECF 18-4, at 2, 180–86. The July MAR indicates that Jones was given his aspirin and amlodipine on July 21, 2023. *Id.* at 173. The July MAR also indicates that Roderer discontinued Jones's HCTZ at some point that month, and it does not state whether Jones received his multivitamin, MG217 Psoriasis ointment, or Lipitor that month. *Id.*

On July 31, 2023, Dr. Sarmiento submitted a consultation request for a cardiology visit and a cardiac monitor, which was approved on August 15, 2023. ECF 18-3, at 32–34; ECF 18-4, at 1, 187–93.

On August 22, 2023, the medical department received an August 10, 2023 sick call slip in which Jones complained that he had put in stickers on July 30, 2023 for refills of his medications but had not received any refills. ECF 18-4, at 150. Specifically, Jones stated that "Meds are out no refills yet every month same thing been almost 1 week." *Id*. In the "comments" section of the sick

---

[5] "Lisinopril is used alone or in combination with other medications to treat high blood pressure" and "is also used in adults to treat congestive heart failure and to improve survival after a heart attack." *Lisinopril*, Drugs.com, https://www.drugs.com/lisinopril.html (last visited Sept. 17, 2025).

call slip, the staff wrote that "all meds good til 12/2/23" and "ordered meds 8/16/23." *Id*. According to Cyran's review of Jones's medical records for 2023, there is no record of a sick call slip submitted on July 30, 2023. ECF 18-11, ¶ 21. She explained that she did not locate a sick call slip between the one dated December 30, 2022, which was received on January 6, 2023, and the one dated August 10, 2023, which was received on August 22, 2023. *Id*.

On September 12, 2023, Jones was seen by Certified Registered Nurse Practitioner Sara Curtis at TidalHealth Cardiology. *Id.* at 53–73. During this appointment, Jones reported no residual symptoms from his stroke and denied any cardiac symptoms. *Id*. at 65. Curtis noted that a Zio monitor was ordered but that it needed to be approved by the state and Jones would have to stay in the infirmary while using the monitor. *Id*. Jones told Curtis that he was having issues with medication in the prison and that sometimes he was not getting it on time. *Id*. Curtis changed Jones's lisinopril to 20 mg twice a day and continued amlodipine 10 mg, atorvastatin 80 mg, clopidogrel 75 mg, and cyanocobalamin 1,000 mcg. *Id*. at 62–63.

On September 26, 2023, Jones submitted a sick call slip requesting medication refills and requesting to see the doctor. *Id.* at 147. The barcodes on the stickers for refills were scanned on the date the sick call was received, September 28, 2023. *Id*. Additionally, Jones was referred to nurse sick call. *Id*. On that same day, September 28, 2023, another sick call slip dated September 27, 2023, was received from Jones. *Id*. at 146. Jones indicated he needed to see the doctor; the response, dated October 3, 2023, indicates that Jones's KOP medications needed to be refilled and that Jones wanted to be seen in chronic care. *Id*.

On October 12, 2023, Registered Nurse Practitioner Oriaku Ijoma submitted a consultation request for the Zio heart monitor, which was approved. ECF 18-3, at 24–29.

7

On October 29, 2023, Jones filed an administrative remedy procedure ("ARP") complaint, complaining that his medications were not "coming on time" despite his having put in "stickers" to get refills. ECF 8-2, at 1–2. Jones stated that he needed his blood pressure pills and his blood thinners, and that "something has to be done about this" because he was not "trying to DIE in this place but it seems like that's what the staff is trying to do." *Id.* at 2 (emphasis in original).

Jones received the Zio heart monitor on November 14, 2023, and he wore it until November 28, 2023. ECF 18-4, at 225–35.

On November 28, 2023, following an investigation, Warden Bailey responded to Jones's October 29, 2023 ARP complaint. In his response, Warden Bailey stated that the complaint had been found meritorious and admitted: "correct you have not been receiving all of your refills as ordered timely." ECF 8-2, at 1. Warden Bailey stated that staff were advised to "adhere to the [Department of Public Safety and Correctional Services] Clinical Services and Inmate Health Operations Manual." *Id.* Neither Jones's ARP complaint nor Warden Bailey's response indicates the time frame during which ECI staff failed to provide Jones with refills. *Id.*

On December 3, 2023, the medical department received a sick call slip from Jones which was dated October 19, 2023. ECF 18-11, ¶ 28; *see also* ECF 18-4, at 151. Jones wrote that he had been out of blood pressure medication for weeks and that the same thing happens every month. ECF 18-4, at 151. The response indicates that Jones was seen on November 2, 2023, and that the issue had been resolved. *Id*. Cyran states that she is not aware of any reason there would be such a delay between the time Jones submitted the sick call slip and the date it was received, as she does not have any involvement in the sick call process. ECF 18-11, ¶ 28.

On December 20, 2023, Dr. Christian Bounds reviewed the results of the Zio heart monitor data and found "no worrisome arrhythmias noted in this study." ECF 18-4, at 223. Jones submitted

8

a sick call slip asking about the results from his heart monitor on February 1, 2024. ECF 18-4, at 153. In response to his request, Jones was scheduled for a chronic care visit on February 14, 2024 followed by a result review. *Id.*

On February 2, 2024, Dr. Ernest Uzicanin saw Jones, who reported feeling "funny" on the left side of his head, weakness in his legs, and chest pains. *Id.* at 49–52. Jones was brought to the infirmary where it was noted that his EKG was "unremarkable and unchanged from previous EKG." *Id.* at 49. Jones's blood pressure was elevated at 146/99, but he exhibited no signs or symptoms of an acute cardiac or neurological event. *Id.* at 50–51. Jones was told to return if his symptoms worsened. *Id.* at 51. Dr. Uzicanin prescribed amlodipine 10 mg, aspirin 81 mg (chewable), atorvastatin 80 mg, clopidogrel 75 mg, and lisinopril 20 mg. *Id.*

On February 6, 2024, Jones was seen by Registered Nurse Katherine Bolton to review the results from his cardiac monitor study. ECF 18-4, at 47–48. At that time, Jones said he was having "rare" episodes of dizziness and palpitations when he changed positions. *Id.* at 48. Bolton noted Jones was scheduled for a chronic care visit on February 14, 2024 to be followed by a visit to review his heart monitor results. *Id.* Bolton wrote that Jones said he understood what she had told him and denied having further questions or concerns. *Id.*

Cyran subsequently saw Jones for a chronic care visit. ECF 18-11, ¶ 32; ECF 18-4, at 41–46. During this visit, Cyran told Jones that the heart monitor study showed no worrisome arrhythmias. ECF 18-11, ¶ 32; ECF 18-4, at 44.

On May 15, 2024, Jones filed suit in this Court. He named Cyran, Dr. Clem, YesCare, and Dr. Eniola as defendants. Jones claims that his medications were not refilled on time, which led to his stroke. ECF 1, at 4. He also appears to claim that he did not receive his medications in a timely manner after his stroke. ECF 8, at 2 (supp.). Jones alleges that as of April 1, 2024, he had not been

9

provided the results of the cardiac monitor and that "YesCare is not tell[ing] [him] anything." ECF 1, at 5. Jones seeks monetary damages and release from prison to receive the skilled medical care he believes he requires. *Id.*

In a supplement to his complaint filed on August 2, 2024, Jones explains that he named Cyran as a defendant because "she is the one that orders medication [and is] the one you see when it's time to get new medications." ECF 8, at 1. He states that he named Dr. Clem as a defendant because Dr. Clem "is the head doctor at [ECI]" and "was the one with final say to send [Jones] out to the [emergency room] when [he] was having [his] stroke." *Id.* Jones clarifies that he does not accuse Dr. Clem of failing to refill his medication. *Id.* Jones states that he named Dr. Eniola as a defendant because Dr. Eniola was the admitting provider at TidalHealth on the day that Jones had his stroke and is therefore a "witness." *Id.*

Dr. Clem asserts that he left his employment at ECI on December 10, 2022, several months before Jones's stroke and was not involved in Jones's medical care or in the decision to send Jones to the hospital after he had his stroke. ECF 18-2, ¶ 5. Cyran asserts that she has "never failed to renew any patient's medication when [she] knew it was expired or was about to expire and was still medically indicated." ECF 18-11, ¶ 5. She adds that she "was never made aware that [Jones] was out of medications but failed to fill them." *Id.* ¶ 41.

**II.    Standard of Review**

The defendants have filed a motion to dismiss Jones's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56. Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party

must have pleaded facts demonstrating it has a plausible right to relief from the court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and "draw all reasonable inferences in favor of" the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S.

519, 520 (1972)). Accordingly, the court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain "enough facts to state a claim for relief that is plausible on its face."'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King*, 825 F.3d at 214 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the court considers matters outside the pleadings on a Rule 12(b)(6) motion, the court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Jones that he had the right to respond to the defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF 19. To date, Jones has not filed a response. Still, the Court is satisfied that Jones has been advised that the motion could be treated as one for

summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion, in part, under Rule 56.

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The court must "view the evidence in the light most favorable to the nonmoving party" and avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015)) (internal quotation marks omitted). However, the court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted). For a factual dispute to be genuine, there must be "sufficient evidence to permit a reasonable jury to find in [the nonmoving party's] favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)); *see*

*also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Humphreys & Partners Architects*, 790 F.3d at 540 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

## III.  Discussion

Section 1983 provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Two elements are essential to state a claim under § 1983: (1) the plaintiff must have suffered a deprivation of "'rights, privileges, or immunities secured by the Constitution and laws'" of the United States; and (2) the act or omission causing the deprivation must have been "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 45 n.3, 48 (1988) (quoting 42 U.S.C. § 1983).

### A.  Claims Against Cyran

Jones claims Cyran violated his constitutional right to medical care in two respects: (1) she failed to refill his prescription medications in a timely manner and (2) she failed to inform him of the results of his heart monitor study.

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Under the Eighth Amendment, the government must "provide medical care for

those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. To prevail on a claim based on the alleged denial of medical care, a plaintiff must establish that the defendants' actions or their failure to act amounted to "deliberate indifference to serious medical needs." *See id.* at 106; *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). A prison medical provider is deliberately indifferent to a serious medical need if, objectively, the prisoner was suffering from a serious medical need and, subjectively, the provider, aware of the prisoner's need for medical attention, failed to either provide such care or to ensure care was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994).

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met "through direct evidence of . . . actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)). If the requisite subjective knowledge is established, officials may avoid liability "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant

actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)); *see also Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment for serious heart condition raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

Jones's claim that Cyan was deliberately indifferent to his serious medical needs because she failed to timely fill his medications fails as a matter of law. To be sure, being at risk of having a stroke is a serious medical condition that, if ignored, creates an excessive risk of harm. However, there is no evidence in the record that Cyran knowingly or recklessly failed to refill Jones's prescriptions. There is record evidence—Warden Bailey's response to Jones's ARP grievance— that a member or members of ECI staff failed to refill Jones's prescriptions in a timely manner. But this evidence does not indicate when the failures occurred in relation to Jones's stroke. In fact, Jones's grievance to which the Warden responded was dated October 29, 2023—almost four months after Jones's stroke. Thus, the Warden's admission in November 2023 that someone at ECI failed, at an unspecified time, to fill Jones's prescriptions in a timely manner does not support a causal connection between the untimely prescription refills and Jones's stroke in July 2023. Furthermore, the evidence shows that Jones complained about a delay in receiving his medications only once before his stroke—on December 30, 2022. That complaint preceded his stroke by more than six months, and the record shows that his medications were refilled by January 5, 2023. Moreover, even if Warden Bailey had concluded that ECI staff failed to timely refill Jones's medications before Jones's stroke, Jones has not submitted any evidence that Cyran (as opposed to some other staff member at ECI) was responsible for this failure. Cyran, on the other hand, has submitted a sworn declaration that she never failed to refill Jones's medications after being made

aware that he was out of them and that she never failed to renew any medically indicated medication that she knew was expired or about to expire. Nothing in the record contradicts Cyran's account. Jones has not established a genuine dispute of material fact as to whether Cyran acted with deliberate indifference with respect to the refilling of his prescriptions.

Jones's claim that Cyran did not inform him of the results of his heart monitor study also fails as a matter of law. Even if the failure to share test results could violate the Eighth Amendment, there was no violation here. The medical records and Cyran's affidavit show that Cyran did, in fact, inform Jones of the results. *See* ECF 18-11, ¶ 32; ECF 18-4, at 44. Therefore, Cyran is entitled to summary judgment on Jones's § 1983 claim for deliberate indifference to his medical needs.

### B. Claims Against YesCare, Dr. Clem, and Dr. Eniola

Jones also names YesCare, Dr. Clem, and Dr. Eniola as defendants. The Court understands Jones to be asserting a *Monell* claim against YesCare and a supervisory liability claim against Dr. Clem. Jones makes no allegations against Dr. Eniola other than that, as the admitting provider at TidalHealth on the day of Jones's stroke, Dr. Eniola witnessed events underlying this action.

A private corporation that acts on behalf of a state actor, such as YesCare, may be found liable under a *Monell* theory of liability under limited circumstances. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (municipal liability under § 1983); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (liability of a private corporation under § 1983). To state a *Monell* claim against a private corporation acting under color of state law, the plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A policy or custom may be established in any of four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate

17

> indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). An entity "may not be held liable under § 1983 solely because it employs a tortfeasor," and the court will not impose liability "under a theory of *respondeat superior*." *Bd. of Cnty. Comm'rs*, 520 U.S. at 403 (citing *Monell*, 436 U.S. at 694); *see Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (noting that liability of a private corporation under § 1983/*Monell*, like local government liability under § 1983/*Monell*, requires more than *respondeat superior*).

In turn, because there is no *respondeat superior* liability under § 1983, an official such as Dr. Clem may be found liable only if the plaintiff shows that the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must plausibly allege that (1) the supervisor had "actual or constructive knowledge" that a subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Jones fails to state a *Monell* claim against YesCare. He alleges only that YesCare did not refill his blood pressure medications in a timely manner and that YesCare is "not telling [him] anything" regarding the results of his heart monitor test. ECF 1, at 4–5. He does not allege that YesCare has a policy or custom that caused it to fail to timely refill his medications or to report the

results of his test. Even construing Jones's allegations liberally, the Court finds that Jones does not plausibly allege that a YesCare policy or custom caused his stroke or deprived him of information about his test results. Jones's claim against YesCare is dismissed without prejudice.

Jones also fails to state a claim against Dr. Clem. Although Jones alleges that Dr. Clem heads ECI's medical staff, Jones does not allege that Dr. Clem knew that his subordinates failed to refill Jones's prescriptions in a timely manner or to inform Jones of his test results, that Dr. Clem responded to these failures inadequately, or that any inaction by Dr. Clem caused harm to Jones. Moreover, Jones does not allege that Dr. Clem himself failed to refill Jones's prescriptions. Because Jones fails to allege that Dr. Clem is personally responsible for the deprivation of his rights or that Dr. Clem is subject to supervisory liability, Jones's claim against Dr. Clem is dismissed without prejudice.

The remaining defendant is Dr. Eniola, who has not been served. Regardless, because Jones proceeds *in forma pauperis*, the Court will review Jones's claims against Dr. Eniola under 28 U.S.C. § 1915, which requires dismissal of any claim that is "(i) frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Jones makes no allegation that Dr. Eniola injured him. Jones states only that Dr. Eniola was an admitting provider at TidalHealth and that Jones named Dr. Eniola as a defendant because Dr. Eniola was a witness. Because Jones has failed to allege any basis under which Dr. Eniola may be held liable, the claim against Dr. Eniola is dismissed without prejudice.

### IV.    Motion to Appoint Counsel

In response to the defendants' motion to dismiss or for summary judgment, Jones has filed a motion requesting that he be appointed counsel. In civil cases, a federal district court judge has

19

the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel, but only if an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). "Courts consider 'the type and complexity of the case,' whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim." *Giddings v. Montgomery Cnty.*, No. GJH-21-959, 2021 WL 5921382, at *1 (D. Md. Dec. 15, 2021) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989)), *aff'd*, No. 22-6057, 2022 WL 1284296 (4th Cir. Apr. 29, 2022). Because Jones's claims against YesCare, Dr. Clem, and Dr. Eniola are dismissed and because the Court grants summary judgment to Cyran, Jones's motion for appointment of counsel is denied.

## V.     Conclusion

For the reasons stated herein, the claims against YesCare, Dr. Clem, and Dr. Eniola are dismissed without prejudice, and summary judgment on Jones's § 1983 claim for deliberate indifference to his medical needs is granted as to Cyran. Jones's motion for appointment of counsel is denied. A separate Order follows.

September 22, 2025
_____          _____
Date                                                    Deborah L. Boardman
                                                              United States District Judge

20